IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| STEPHEN DOUGHERTY | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 13-289 |
| v. | ) | |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

ARTHUR J. SCHWAB, District Judge.

## I. Introduction

Plaintiff, Stephen Dougherty ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have submitted cross motions for summary judgment on the record developed at the administrative proceedings. For the following reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 12) will be denied. The Commissioner's Motion for Summary Judgment (Doc. No. 15) will be granted and the administrative decision of the Commissioner will be affirmed.

## II. Procedural History

As a child, Dougherty received SSI benefits based on a diagnosis of Asperger's syndrome. (R. at 21).[1] Upon reaching the age of 18, his eligibility for SSI benefits was

---

[1] References to the administrative record (Doc. No. 7), will be designated by the citation "(R. at __)".

redetermined under the rules for determining disability in adults. (R. at 21, 33-34). This redetermination resulted in a finding that Plaintiff was no longer disabled as of September 1, 2010. (R. at 21).

On June 4, 2012, Plaintiff filed an application for DIB, alleging disability beginning on June 3, 2012, again due to Asperger's syndrome. (R. at 83-84). An administrative hearing was held on December 4, 2012, before Administrative Law Judge ("ALJ") Daniel F. Cusick. (R. at 21). Plaintiff, his grandmother, a caseworker named Charles Giambrone, and a vocational expert, George J. Starosta, each testified at the hearing. (R. at 324-367).

On December 27, 2012, the ALJ issued a decision in which he determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 32). The Appeals Council denied Plaintiff's request for review on May 13, 2013, rendering the ALJ's decision the final decision of the Commissioner in this case. (R. at 12-14).

Plaintiff commenced the instant action on September 19, 2013, seeking judicial review of the Commissioner's decision. (Doc. No. 1). Plaintiff filed a Motion for Summary Judgment on February 26, 2014. (Doc. No. 12). The Commissioner filed a Motion for Summary Judgment on March 25, 2014. (Doc. No. 15). These motions are the subject of this Memorandum Opinion.

**III.     Statement of the Case**

In his decision, the ALJ made the following findings:

1. The claimant attained age 18 on May 8, 2009, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18. The claimant was notified that he was found no longer disabled as of September 1,

2010, based on a redetermination of disability under the rules for adults who file new applications. (R. at 25).

2. The claimant meets the insured status requirements of the Social Security Act through March 31, 2013. (R. at 25).

3. The claimant has not engaged in substantial gainful activity since June 3, 2012, the alleged onset date (20 C.F.R. § 404.1571 et seq.). (R. at 25).

4. Since September 1, 2010, the claimant has had the following severe impairments: Asperger's syndrome, Tourette's syndrome, attention deficit hyperactivity disorder (ADHD), and oppositional defiance disorder (ODD) (20 C.F.R. 416.920(c)). (R. at 25).

5. Since September 1, 2010, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926)). (R. at 26).

6. After careful consideration of the entire record, the undersigned finds that since September 1, 2010, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing only simple, routine, repetitive tasks involving only simple work related decisions with few, if any, work place changes, and no tandem tasks. The claimant is limited to only occasional interaction with the public, co-workers, and supervisors. (R. at 27-30).

7. Since September 1, 2010, the claimant has been unable to perform any past relevant work. (20 C.F.R. 416.965)). (R. at 30).

8. The claimant was born on May 9, 1991 and is a younger individual age 18-49 (20 C.F.R. 416.963)). (R. at 31).

9. The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. 416.964)). (R. at 31).

10. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. (20 C.F.R. 416.968)). (R. at 31).

11. Since September 1, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. 416.969, and 416.969(a)). (R. at 31).

12. The claimant's disability ended on September 1, 2010, and the claimant has not become disabled again since that date. (20 C.F.R. 416.987(3) and 416.920(g)). (R. at 32).

13. The claimant has not been under a disability, as defined in the Social Security Act, from June 3, 2012, through the date of this decision. (20 C.F.R. § 404.1520(g)). (R. at 32).

## IV.    Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions, he or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

6

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. It is on this standard that the Court has reviewed the parties' cross-motions for summary judgment.

V.  **Discussion**

In his Motion for Summary Judgment, Plaintiff argues that the ALJ committed several reversible errors. (Doc. No. 12). Specifically, Plaintiff contends that: (1) his pervasive developmental disorder of Asperger's syndrome, standing alone or combined with his other mental impairments, meets the requirements of Listing 12.10; (2) the ALJ improperly evaluated the opinions offered by his treating physician and an independent caseworker; (3) the ALJ failed to consider the testimony offered by a caseworker, Charles Giambrone; and (4) the ALJ improperly discounted the credibility of Plaintiff's own testimony. The Commissioner counters that the ALJ properly evaluated the evidence submitted and that his decision is supported by substantial evidence. (Doc. No. 15). Each of Plaintiff's contentions will be addressed in turn.

   A.  ***Plaintiff's Impairments do not Meet or Equal the Criteria of Listing 12.10***

Plaintiff first challenges the ALJ's determination at step three of the sequential evaluation process that Plaintiff's impairment or combination of impairments did not meet or equal Listing 12.10, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.10. The Listing of Impairments describes impairments that preclude an adult from engaging in substantial gainful activity without regard for his or her age, education or work experience. *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). A claimant who meets or medically equals all of the criteria of a listed impairment is *per se*

disabled and no further analysis is necessary. *Burnett v. Comm'r*, 220 F.3d 112, 119 (3d Cir. 2000). The burden is on the claimant to present evidence in support of his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

In the instant case, Plaintiff contends that the ALJ erred in determining that his impairments did not meet the criteria of Listing 12.10: "Autistic Disorders and other pervasive developmental disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.10. Section 12.10 requires:

A. Medically documented findings of the following:

   *   *   *   *   *   *   *

   2. For other pervasive developmental disorders, both of the following:

   a. Qualitative deficits in reciprocal social interaction; and

   b. Qualitative deficits in verbal and nonverbal communication and in imaginative activity;

AND

B. Resulting in at least two of the following:

   1. Marked restriction of activities of daily living; or

   2. Marked difficulties in maintaining social functioning; or

   3. Marked difficulties in maintaining concentration, persistence, or pace; or

   4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.10.

In asserting that his impairments satisfy the requirements of paragraph "B" of Listing 12.10, Plaintiff relies entirely on the opinion of his treating physician, Dr. Harshad Patel, as expressed on a mental residual functional capacity checklist assessment.[2] (R. at 137-140). On

---

[2] Plaintiff's motion for summary judgment fails to address whether his impairment meets the mandatory requirements of paragraph "A" of Listing 12.10.

8

that form, completed on March 21, 2012, Dr. Patel checked boxes indicating that Plaintiff was mildly limited in his ability to perform activities within a schedule and interact with the general public; moderately limited in his ability to understand, remember and carry out simple instructions, ask simple questions, get along with co-workers, maintain socially appropriate behavior, be aware of hazards, and set realistic goals or to make plans independently; and markedly limited in his ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically-based symptoms, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation. (R. at 137-139). Dr. Patel opined that Plaintiff would likely miss work more than three times a month. (R. at 140). Plaintiff contends that Dr. Patel's responses describe limitations "which exactly meet the requirements of Listing 12.10" and that the ALJ should have accorded them controlling weight. (Doc. No. 13 at 5).

As correctly noted by Plaintiff, an ALJ must generally give the opinion of a treating physician "substantial and possibly controlling weight." *Chetoka v. Colvin*, 2014 WL 295035, at *10 (W.D. Pa. Jan. 27, 2014) (citing *Johnson v. Comm'r.*, 529 F.3d 198, 201-02 (3d Cir. 2008)). However, in order to be accorded greater weight, that opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Hagner v. Barnhart*, 57 F. App'x 981, 983 (3d Cir. 2003). An ALJ is entitled to reject the opinion of a

9

treating physician if it is "conclusory and unsupported by the medical evidence." *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

In the instant case, the ALJ explained that Dr. Patel's responses on the checkbox form were entitled to "little weight" because they were "conclusory" and conflicted with Dr. Patel's own treatment notes. For example, Dr. Patel's treatment notes from the relevant time period consistently indicated that Plaintiff was responding well to treatment (R. at 286, 303-304, 306, 308-309, 312, 315) and that his symptoms were decreasing (R. at 303-304, 306, 308-311). Dr. Patel routinely described Plaintiff's speech as relevant, his thought process as coherent, and his cognition, memory and concentration as fair (R. at 286, 314-316). Finally, Dr. Patel noted that Plaintiff was stable on his medications (R. at 316-317, 319) and that his mental status was typically "normal" upon examination (R. at 303-305, 307, 312).

Courts have consistently held that an ALJ may grant less weight to a treating physician's opinion where it conflicts with his own treatment notes. *See, e.g., Millard v. Comm'r.*, 2014 WL 516525, at * 2 (W.D. Pa. Feb. 7, 2014) ("An ALJ . . . may give less weight to a treating physician's opinion that is inconsistent with the physician's own treatment notes."); *Chetoka*, 2014 WL 295035, at *11 (The ALJ properly concluded that the limitations assessed in the disability opinion were inconsistent with [the physician's] own treatment notes."). This is particularly true where the treating physician's opinion is expressed by way of a "check-the-box" form with no supporting rationale or narrative statement. *See, e.g., Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Hagner*, 57 F. App'x at 983 (noting that the ALJ properly accorded "minimal weight" to a treating physician's opinions "because they were offered on 'check-the-box' forms, were unsupported by objective findings, and were

inconsistent" with his follow-up treatment notes). Such is the case with the opinion offered by Dr. Patel. Consequently, the ALJ's decision to afford "little weight" to that opinion was supported by substantial evidence.

### B. *The ALJ Appropriately Evaluated and Weighed the Evidence of Record*

As a corollary to his first argument, Plaintiff next contends that, even if his condition does not meet the requirements of Listing 12.10, the ALJ still should have given great weight to Dr. Patel's medical opinion that Plaintiff was disabled. Plaintiff maintains that the functional limitations described by Dr. Patel on the check-box form demonstrated marked impairments in many work-related functions, warranting a finding of disability.

As discussed above, the Court has already concluded that substantial evidence supported the ALJ's decision to accord little weight to Dr. Patel's opinion. The opinion of a treating physician is not automatically entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). Rather, an ALJ may reject a medical source's conclusions so long as he adequately explains his reasons for doing so in the record. *See Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."). The ALJ did so in the instant case, explaining that Dr. Patel's opinion was "conclusory" and conflicted with his own treatment notes.[3] (R. at 30).

---

[3] This is consistent with 20 C.F.R. § 404.1527(d)(1-6) which provides that :
> Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors.

11

The ALJ also found that Dr. Patel's opinion was inconsistent with the other medical opinions of record. For example, a consulting psychologist, Dr. Robert Craig, examined Plaintiff in August of 2010 and concluded that he had no limitations in understanding, remembering, and carrying out simple instructions.[4] (R. at 30, 253). He also opined that Plaintiff had slight-to-moderate limitations in his ability to interact appropriately with the public, co-workers and supervisors and to respond to the changes and pressures of a routine work setting. (R. at 253). Dr. Craig did not find any "marked" or "extreme" limitations. (R. at 253). The ALJ accorded great weight to Dr. Craig's findings because his opinion was supported with a "detailed [and] well-reasoned report establishing the foundations for his opinions." (R. at 30).

Similarly, Dr. Edward Jonas, another consulting psychologist, examined Plaintiff in September of 2010 and concluded that Plaintiff had only moderate limitations and was able to meet the basic mental demands of competitive work on a sustained basis. (R. at 30, 263-265). Dr. Jonas' opinion was reviewed and affirmed by Dr. Arlene Rattan, another consulting psychologist, based on a review of Plaintiff's medical records. The ALJ accorded great weight

---

20 C.F.R. § 404.1527(d)(1- 6).

[4] Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(I). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

to these opinions because they were supported by objective clinical findings and consistent with the other medical evidence in the record. (R. at 30).

In sum, the ALJ conducted a thorough evaluation of the medical evidence in concluding that Dr. Patel's opinion was not entitled to controlling weight. (R. at 28-30). In making this determination, the ALJ provided sufficient and well-reasoned grounds, and his conclusions are supported by substantial evidence.

### C. *The ALJ Discussed all Relevant Evidence*

Plaintiff next contends that the ALJ improperly failed to discuss the testimony of Charles Giambrone, a caseworker who specializes in working with individuals with Asperger's syndrome and Autism. (Doc. No. 13 at 16). Giambrone testified before the ALJ that he had met with Plaintiff on one occasion to discuss Plaintiff's "likes and dislikes" as part of a process to determine whether his daily routine indicated employability. (R. at 359). Giambrone opined that Plaintiff "has a very difficult time with any activities," but acknowledged that he hadn't spent much time with him. (R. at 362). Giambrone also conceded that he was unable to "give expert testimony on how long it will take" for Plaintiff to "get into the working world." (R. at 362).

Social Security Rule (SSR) 06-03p requires an ALJ to discuss all opinions offered into evidence, including those from non-medical sources, "when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6. Here, although the ALJ did not explicitly discuss Giambrone's testimony, he did state that his decision was based on "the entire record." (R. at 27). Moreover, it is evident that Giambrone's limited testimony would not have had an effect on the outcome of the case in light of the medical and opinion sources already in the record. *See, e.g., Strouse v. Astrue*, 2010 WL 1047726, at *7 (E.D. Pa. Mar. 19, 2010)

(holding that an ALJ's failure to discuss a caseworker's letter in her opinion was not improper under SSR 06-03p because "the ALJ provided a clear, detailed explanation of all medical and opinion sources affecting her decision"); *Buffington v. Comm'r*, 2013 WL 796311, at *9 (D.N.J. Mar. 4, 2013) (finding that the ALJ's failure to discuss non-medical source testimony was not erroneous because that testimony "[would] not have a significant effect on the outcome of the case."); *Butterfield v. Astrue*, 2011 WL 1740121, at *6 (E.D. Pa. May 5, 2011) ("[C]ourts have found that an ALJ's failure to address lay opinion testimony, although technically in violation of applicable legal standards, did not require remand since the testimony would not have changed the outcome of the case."). In short, substantial evidence supported the ALJ's consideration of the testimony offered by Giambrone.

### D. The ALJ Properly Evaluated the Credibility of the Plaintiff

Finally, Plaintiff contends that the ALJ improperly evaluated the credibility of Plaintiff's own testimony concerning his limitations. (Doc. No. 16 at 14). In determining the credibility of an individual's subjective complaints of pain and other symptoms, the ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements . . ., statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96–7p, 1996 WL 374186, at *1. If the ALJ determines that the credibility of the claimant's testimony should be discounted, the ALJ must provide reasons for discounting that testimony. *See Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D. Pa. 1998).

In the instant case, the ALJ noted that Plaintiff's testimony concerning his alleged limitations was "not entirely credible" because it conflicted with both the medical evidence of

14

record and his own testimony concerning his daily activities. (R. at 28). With respect to the latter, the ALJ noted that Plaintiff was able to care for his personal hygiene, do some minimal chores around the house, and take care of his cat and two dogs. (R. at 29, 343-346). He also observed that Plaintiff occasionally went shopping, visited his aunt, and had recently started walking for exercise. (R. at 29, 343, 346). Finally, the ALJ cited Plaintiff's testimony that he spent most of his time playing video games, reading, and using his computer. (R. at 29, 346). The regulations explicitly authorize an ALJ to consider such activities as relevant factors in assessing credibility. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (directing the ALJ to examine the claimant's daily activities in assessing the severity of their symptoms).

Plaintiff, in response, argues that the ALJ drew unwarranted inferences from the evidence of Plaintiff's daily activities and improperly relied on those inferences to discount his testimony. Plaintiff correctly notes that "sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity." *Fargnoli*, 247 F.3d 34 at 40. However, this does not mean that the ALJ may not "gauge the credibility and weight of the subjective testimony against the other evidence in the record, including adverse objective medical findings, diagnoses, and expert medical opinions." *Torres v. Harris*, 494 F.Supp. 297, 300 (D.C. Pa. 1980). In the instant case, the ALJ explicitly supported his decision to discount Plaintiff's testimony by explaining that it was also inconsistent with other medical evidence of record. (R. at 28). This evidence included the previously-discussed treatment notes provided by Dr. Patel and the consulting opinions of Dr. Craig and Dr. Jonas. (R. at 29-30).

It is axiomatic that an ALJ's credibility determinations, if properly supported, are entitled to "great deference." *Davis v. Califano*, 439 F.Supp. 94, 98 (E.D. Pa. 1977). In the instant case, it is apparent that the ALJ reviewed the entire record and adequately supported his rationale for

discounting Plaintiff's testimony. In short, substantial evidence supported the weight that the ALJ gave to Plaintiff's subjective complaints.

## VI. Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's administrative decision will be affirmed. An appropriate order follows.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

cc: All Registered ECF Counsel and Parties